IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EMILIANO ROMERO,                )
                                    )
       Petitioner,            )
                                      )
      v.                       )       1:26-cv-394 (LMB/LRV)
                                    )
KRISTI NOEM, et al.,         )
                                    )
       Respondents.      )

ORDER

Petitioner Emiliano Romero ("Romero"), a native and citizen of El Salvador, has filed a two-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since January 10, 2026. Specifically, he alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act (Count I) and his due process rights (Count II).

Romero is currently detained at the Caroline Detention Facility, which is within this Court's jurisdiction and the basis upon which he is suing Paul Perry, the warden of the Caroline Detention Facility. Romero has also sued Kristi Noem, the DHS Secretary; Todd Lyons, the Acting Director of ICE; Robert Guadian, the Director of the Washington ICE Field Office; and Pamela Bondi, the Attorney General (collectively, "the federal respondents"). For the reasons discussed in this Order, the Court finds that Romero is detained pursuant to 8 U.S.C. § 1226(a). Accordingly, his Petition will be granted as to Count II, and respondents will be ordered to

release him from custody and provide him with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).[1]

## I.

According to his Petition, Romero first entered the United States in or around 1991, was placed into removal proceedings, and granted voluntary departure. [Dkt. No. 1] at ¶ 39. Romero entered the United States again in 1997, was apprehended shortly thereafter, was released from custody pursuant to a custody determination under 8 U.S.C. § 1226, and was placed into standard removal proceedings. Id. ¶ 40. Separately, DHS erroneously linked Romero to the name and A-number of another individual and thus placed Romero in removal proceedings under the second identity. Id. ¶ 41. "Under that identity and A-number, the Chicago Immigration Court entered an in absentia removal order on March 3, 1999" even though Romero "did not receive written notice of the hearing at which that order was entered." Id.

"At some point after returning to the United States," Romero obtained Temporary Protected Status under his true name. Romero travelled internationally multiple times, most recently in 2014. Id. ¶ 42. When he returned to the United States in 2014, DHS paroled him back into the country, and Romero has not departed from the United States since. Id.

On January 10, 2026, ICE took Romero into custody. Id. ¶ 43. Initially, ICE custody records reflected the incorrect identity. Id. On January 14, 2026, Romero, acting through counsel, filed an Emergency Motion to Rescind In Absentia Removal Order and Reopen Removal Proceedings in the Chicago Immigration Court. Id. ¶ 44. On January 27, 2026, the Immigration Judge reopened the removal proceedings. Id. ¶ 45. The master calendar hearing is

---

[1] Because the Court is granting relief on due process grounds, it need not address Romero's claim under the Immigration and Nationality Act.

set for May 21, 2026. Id. ¶ 47. Romero is the father of two U.S. citizen children. Id. ¶ 49. His twenty-year-old son is a member of the U.S. military, and his fourteen-year-old child "depends on [Romero's] day-to-day presence and support." Id.

Romero filed his Petition for Writ of Habeas Corpus on February 10, 2026. [Dkt. No. 1]. This Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to "file either a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818 (E.D. Va.), or an Opposition to the Petition discussing the material differences between Ceba Cinta and this Petition." [Dkt. No. 3] at 1. In response, the federal respondents filed a Notice stating that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in Ceba Cinta" and requesting that this Court "incorporate the filings in Ceba Cinta into the record of this habeas case." [Dkt. No. 4] at 1. Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

## II.

The central question posed in Romero's Petition is whether he is subject to mandatory detention under § 1225(b)(2) or instead subject to discretionary detention and entitled to a bond hearing under § 1226(a). As the federal respondents argued in their Ceba Cinta opposition—which has been incorporated into the record in this civil action—whether an individual is detained under § 1225(b) or § 1226(a) lies in the "distinction between aliens who are detained after a lawful admission into the U.S. and those who are present without a lawful admission." Ceba Cinta v. Noem, et al., 1:25-cv-1818, Dkt. No. 9 (E.D. Va. Oct. 28, 2025). According to the

3

federal respondents, anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a) applies only to those who have been given legal status and subsequently placed into removal proceedings. Id. Therefore, they argue that because Romero has not been admitted "as a legal matter" into the United States, he is inadmissible under 8 U.S.C. § 1182(a), considered to be an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). Id.

This argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as numerous district courts throughout the country have found,[2] is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. See Romero v. Hyde, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have an extremely limited (if any) application." Lopez Benitez v. Francis, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025). The Court has previously addressed several of these points in Hasan v. Crawford, 800 F. Supp. 3d 641 (E.D. Va. 2025), and adopts the findings and conclusions in Hasan into this Order.

---

[2] See Demirel v. Fed. Det. Ctr. Phila., 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025) (noting that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here"). Although the Court is aware of the Fifth Circuit's decision reaching a contrary conclusion, that decision is not binding here. See CASA de Md., Inc. v. Trump, 971 F.3d 220, 260 (4th Cir. 2020). Moreover, the Court is unpersuaded by the Fifth Circuit majority's rationale for many of the reasons cogently set forth in Judge Douglas's dissent, which explains that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent. Buenrostro-Mendez v. Bondi, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

Romero has been present in the United States since at least 2014.  [Dkt. No. 1] at ¶ 42.

Because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already

present in the United States," Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), Romero's

detention is governed by § 1226(a).  See Abreu v. Crawford, 2025 WL 51475, at *3 (E.D. Va.

Jan. 8, 2025) ("There is a statutory distinction between noncitizens who are detained upon

arrival into the United States and those who are detained after they have already entered the

country, legally or otherwise.").  And under § 1226(a) and its implementing regulations, he is

entitled to a bond hearing before an Immigration Judge, in which an Immigration Judge must

determine whether he poses a danger to the community, and whether he is a flight risk.  8 U.S.C.

§ 1226(a); 8 C.F.R. § 1236.1(d)(1).  Unless an Immigration Judge makes such a determination,

Romero's continued detention is unlawful.

### III.

For all these reasons, Romero's Petition, [Dkt. No. 1], is GRANTED, and it is hereby

ORDERED that Romero be promptly released from custody, with all his personal

property, pending his bond hearing before an Immigration Judge.  Romero must live at a fixed

address which he must provide to the federal respondents[3]; and it is further

ORDERED that respondents provide Romero with a standard bond hearing before an

Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of this Order; and it

is further

ORDERED that respondents be and are ENJOINED from denying bond to Romero on

the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

---

[3] If petitioner opts to file a pleading in this civil action notifying the federal respondents of his
fixed address, petitioner should file that pleading under seal.

ORDERED that, if Romero is granted bond, respondents be and are ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2)[4]; and it is further

ORDERED that respondents file a status report with this Court within 3 days of the bond hearing, stating whether Romero has been granted bond, and, if his request for bond was denied, the reasons for that denial.

The Clerk is directed to enter judgment in Romero's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 19th day of February, 2026.

Alexandria, Virginia

_____ /s/

Leonie M. Brinkema
United States District Judge

---

[4] This Court has previously found that "the automatic stay imposed in immigration cases constitutes an unequivocal violation of due process." Hasan, 800 F. Supp. 3d at 661.